NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000995
29-JAN-2014
08:29 AM**

NO. CAAP-12-0000995

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

BIG ISLAND TOYOTA, INC., a Hawaiʻi corporation;
DAVID S. DE LUZ, SR. ENTERPRISES, INC.,
a Hawaiʻi corporation; and DAVID S. DE LUZ, SR.,
Plaintiffs/Counterclaim-Defendants/Appellees,
v.
VICTOR D. TREVINO, JR., Defendant/Counterclaim-Plaintiff/
Third-Party Plaintiff/Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 06-1-373)

MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Ginoza, JJ.)

Pro se Defendant/Counterclaim-Plaintiff/Third-Party
Plaintiff/Appellant Victor D. Trevino, Jr. (Trevino) appeals from
the: (1) October 9, 2012 Final Judgment[1] entered in favor of
Plaintiffs/Counterclaim-Defendants/Appellees Big Island Toyota,
Inc., David S. De Luz, Sr. Enterprises, Inc. (DSDE)[2] and David S.
De Luz, Sr. (De Luz) (collectively, Toyota Plaintiffs); and (2)
August 2, 2012 "Order Denying Defendant Victor D. Trevino, Jr.'s
Motion For Reconsideration Of Order Denying Defendant Victor D.
Trevino's Motion For Recusal And/Or Disqualification Of Judge
Glenn S. Hara Filed Under Seal On January 17, 2012, Filed March
22, 2012, Filed April 2, 2012"[3] (Order Denying Reconsideration)

---

[1]  The Honorable Glenn S. Hara (Judge Hara) presided.

[2]  David S. De Luz, Sr. Enterprises, Inc. is the parent company of Big
Island Toyota, Inc.

[3]  The Honorable Elizabeth A. Strance (Judge Strance) presided.

both entered in the Circuit Court of the Third Circuit (circuit court).

On appeal, Trevino contends Judge Strance erred by failing to recuse Judge Hara. Trevino also contends Judge Hara erred by:

(1) failing to disqualify himself,

(2) limiting a witness' testimony about consultation with Judge Hara when the judge was a practicing attorney,

(3) not granting Trevino's request to change venue,

(4) allowing non-expert hearsay opinion testimony to be heard by the jury on issues of damages,

(5) allowing issues of breach of fiduciary duty, conversion, negligence/gross negligence, breach of contract, and punitive damages to be submitted to the jury without sufficient evidence,

(6) sending a special verdict form with duplicative damage awards to the jury, and

(7) admitting prejudicial hearsay evidence on issues of damages.

## I. BACKGROUND

On December 29, 2006, Toyota Plaintiffs filed their First Amended Complaint against Trevino and other parties. The Toyota Plaintiffs alleged a variety of misconduct by Trevino, including that he abused his positions of authority with DSDE for his own benefit. On December 8, 2008, Toyota Plaintiffs filed a Revised Second Amended Complaint alleging: Count I Breach of Fiduciary Duty, Count II Civil Conspiracy, Count III Fraud/Fraudulent Conveyance, Count IV Conversion, Count V Misappropriation of Trade Secrets, Count VI Interference With Business Relations, Count VII Professional Malpractice, Count VIII Injunctive Relief, Count IX Negligence, and Count X Breach of Contract. On January 4, 2012, the parties stipulated to a dismissal of Counts III (Fraud/Fraudulent Conveyance), V (Misappropriation of Trade Secrets), VI (Interference With Business Relations), and VII (Professional Malpractice).

On January 10, 2012, after opening statements at trial, Judge Hara held a conference with the parties to disclose his

2

relationship with Ivan Nakano (Nakano). Nakano was Trevino's "boss" in 2003. Judge Hara stated that Nakano was a high school classmate, they saw each other at high school reunions, and Nakano was on a board that organizes these reunions. Nakano had been dismissed from Hilo Toyota in 2003 and subsequently asked Judge Hara, who was then a practicing attorney, to review the written severance agreement. Trevino's counsel, Kris A. LaGuire (LaGuire), then made an oral motion for recusal of Judge Hara. LaGuire stated that he may call Nakano as a witness, referred to Toyota Plaintiffs' exhibit number 309A (a memo from Trevino concerning Nakano's termination package), and cited the Hawaiʻi Code of Judicial Conduct (HCJC) in support of his motion to have Judge Hara recused based on his alleged personal bias or prejudice or knowledge of facts that were in dispute in the proceedings. Toyota Plaintiffs' counsel countered that Nakano's role in the present litigation was so limited that there would be no danger of prejudice to Trevino if Judge Hara heard the case.

On January 17, 2012, Trevino filed a written "Motion for Recusal and/or Disqualification of Judge Hara" (Motion for Recusal).

On January 20, 2012, Judge Strance held a hearing on Trevino's Motion for Recusal. LaGuire specified that the Motion for Recusal was based on a claim that Judge Hara had personal knowledge of the facts that were in dispute in the proceeding, or alternatively, that he had a personal bias or prejudice against Trevino. HCJC Rule 2.11(a)(1). LaGuire stated that Trevino had negotiated Nakano's "contentious" termination package, and that Nakano "believed that he was being treated poorly and unfairly" and had consulted with Judge Hara, then a practicing attorney. Under these circumstances, LaGuire contended it would be reasonable to assume that Nakano would have told Judge Hara, in his capacity as Nakano's attorney, facts that relate to claims in dispute in the instant case. LaGuire stated:

> Victor Trevino came in eight, ten months ago. You know, [Nakano] may well have the same opinion that other De Luz people are saying, that [Trevino] was basically his henchman; that if [De Luz] wanted someone fired, he would send Victor Trevino out. [Nakano] might have dumped all kinds of nasty allegations against Mr. Trevino.

3

Toyota Plaintiffs' counsel pointed out that Nakano left Toyota in 2003 and "[a]ll of the shenanigans that we're accusing [Trevino] of committing arose around 2004," and the jury will be asked to decide facts concerning those 2004 acts, not facts concerning Nakano's severance agreement. Judge Strance denied Trevino's motion stating "there is an absence of specified facts in dispute or a factual knowledge base on the part of Judge Hara that would raise the specter of bias." Judge Strance further instructed the parties that they should identify specific facts and make them known to Judge Hara so that he can undertake a self-assessment of his impartiality.

On February 8, 2012, before Nakano was scheduled to testify at trial, Judge Hara stated for the record that he had discussed in his chambers his intention to place a limitation on the examination of Nakano, noting that he had disclosed previously to the parties' current and past counsel that Nakano is his high school classmate, and that he had consulted with Nakano about his termination from Hilo Toyota. Judge Hara indicated that his initial disclosure of this relationship occurred "years" ago at the early stages of litigation and involved Toyota Plaintiffs' present counsel, Paul M. Saito (Saito) and Trevino's previous counsel, Nadine Ando (Ando) and James Bickerton (Bickerton). Noting that LaGuire had made an oral motion to recuse at the beginning of trial in January 2012, Judge Hara stated that he denied the motion because the request for the recusal was delayed.

Judge Hara then specified that limits on the scope of the examination of Nakano "would apply to anything with respect to his consultation with me after his termination" excepting the fact that Nakano did consult with counsel. But "what was discussed, and who he consulted should not be inquired into." Judge Hara further stated "I think the [circuit c]ourt's saying the . . . defendant has waived its rights to ask for a disqualification, and this limitation is necessitated to . . . effectuate the waiver." LaGuire objected because he had not been aware of Judge Hara's relationship with Nakano and made an oral motion to renew his motion to disqualify Judge Hara. The

circuit court denied LaGuire's oral motion.

Later that day on February 8, 2012, Nakano testified at trial. Nakano testified that Hilo Toyota Inc. hired him in 1971, after which he served as an office manager, business manager, controller, general manager, and vice-president of DSDE. Nakano considered himself De Luz's "right-hand man" until he left the company.

Nakano testified that he met Trevino in the early part of 2003 through De Luz. He had discussed with De Luz Trevino's credentials as an attorney and a certified public accountant (CPA), and took part in hiring Trevino for DSDE. After Trevino was hired, Nakano learned Trevino was not a CPA. However, Nakano believed he (Nakano) was "on [his] way out" because De Luz began to treat him in a rough manner and Nakano in fact left the company six months later on January 1, 2004. Prior to leaving, De Luz accused Nakano of "ripping off the company." Nakano testified De Luz was getting the wrong information from Trevino. Nakano learned that De Luz believed Nakano was stealing from the company. The following exchange occurred upon LaGuire's redirect examination of Nakano:

> [LaGuire]: Ok. Did you speak with that [sic] attorney when you went to consult about you leaving the, uh, company about the influence Victor Trevino had over Mr. De Luz?
>
> [Toyota Plaintiffs' Counsel]: Objection, Your Honor. Beyond the scope and it's attorney/client privilege.
>
> [Circuit] Court: Well, [sic] beyond the scope. Sustained.

Nakano testified that he negotiated the terms of his resignation with Trevino and DSDE's new accountant until about April or May 2004. These terms included a four-page noncompete letter, stating that Nakano would not engage in any duties he had with DSDE within a radius of a hundred miles. Nakano stated he spoke to an attorney regarding the noncompete clause, refused to sign it, and went to work for Kamaaina Motors.

On February 17, 2012, the jury returned their verdict awarding Toyota Plaintiffs $448,414 for Count I Breach of Fiduciary Duty, $20,000 for Count IV Conversion, $112,425 for Count IX Negligence/Gross Negligence, $193,250 for Count X Breach of Contract, and $626,942 for Punitive Damages against Trevino.

On October 9, 2012, the circuit court entered Final Judgment reflecting these amounts and also awarded Toyota Plaintiffs attorneys' fees in the amount of $160,416 and costs in the amount of $32,098.52.

On April 2, 2012, Trevino filed a "Motion for Reconsideration of the Order Denying His Motion for Recusal And/ or Disqualification of Judge Hara" (Motion for Reconsideration). Trevino stated that on February 6, 2012, Judge Hara held a chambers conference with the parties' counsel and disclosed that he would limit Nakano's testimony and that he had raised the recusal and/or disqualification issue with Trevino's previous attorneys, Bickerton and Ando. LaGuire filed a declaration stating, on February 8, 2012, he spoke to Ando and Bickerton who advised him that they did not recall being informed of the relationship between Judge Hara and Nakano and had reviewed their case file and found no record of any such disclosure by Judge Hara. According to LaGuire, Ando and Bickerton refused to sign declarations regarding this issue due to their ongoing financial disputes with Trevino. Also on that day, Trevino filed an affidavit stating that he had never been informed of Judge Hara's relationship with Nakano prior to January 10, 2012 by either Judge Hara or his then-counsel, Ando and Bickerton.

On May 14, 2012, Judge Strance held a hearing on Trevino's Motion for Reconsideration. LaGuire stated that on February 8, 2012, when Nakano was waiting to be called to the stand, Judge Hara informed the parties' attorneys that he planned to limit Nakano's testimony and prohibited LaGuire from asking Nakano who his lawyer was or what was discussed.

On August 2, 2012, the circuit court filed its Order Denying Reconsideration basing it on the following facts and conclusions:

> (1) [Trevino] has not satisfied his burden to present new facts that would warrant reconsideration of the [circuit] court's prior order.
>
> a. Judge Hara's finding of "waiver" on Trevino's former counsel's failure to move for recusal or disqualification nor his limitation of Trevino's counsel's scope of examination of [Nakano] are "new evidence" required to enable this [circuit] court to reconsider its prior decision.

b.  Judge Hara's rulings are more properly decisions that can be appealed to a higher court, and this [circuit] court is without sufficient information to enable it to decide if Judge Hara's findings were proper under applicable law.

(2) [Trevino] has not satisfied his burden of establishing that his alleged newly discovered facts were relevant to a disputed material fact or issue in the trial presided over by Judge Hara.

On November 8, 2012, Trevino filed his notice of appeal from the circuit court's October 9, 2012 Final Judgment, and August 2, 2012 Order Denying Reconsideration.

## II.   DISCUSSION

"Decisions on recusal or disqualification present perhaps the ultimate test of judicial discretion and should thus lie undisturbed absent a showing of abuse of that discretion." TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 252, 990 P.2d 713, 722 (1999) (quoting State v. Ross, 89 Hawai'i 371, 375, 974 P.2d 11, 15 (1998)).  "[T]he proper test for disqualification is an objective one as to what a reasonable outsider would believe, not what the judge subjectively believes." Yorita v. Okumoto, 3 Haw. App. 148, 153, 643 P.2d 820, 825 (1982).

Trevino cited Hawaii Revised Statutes (HRS) § 601-7(b) (1993 and Supp. 2012) and HCJC Rule 2.11(a)(1) as authorities for his Motion for Recusal.  HRS § 601-7(b) concerns situations in which a party "files an affidavit that the judge before whom the action or proceeding is to be tried or heard has personal bias or prejudice either against the party or in favor of any opposite party to the suit[.]"[4]  Trevino's affidavit, attached to his

---

[4]  The full-text of HRS § 601-7 (1993 and Supp. 2012) is as follows:

§607-7 Disqualification of judge; relationship, pecuniary interest, previous judgment, bias or prejudice. (a) No person shall sit as a judge in any case in which:

(1) The judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such relative, a more than de minimis pecuniary interest; or

(2) The judge has been of counsel or on an appeal from any decision or judgment rendered by the judge;

provided that no interests held by  mutual or common funds, the investment or divestment of which are not subject to the
(continued...)

7

Motion for Recusal, alleged that Judge Hara had "personal knowledge of facts in dispute in this trial" and did not specifically allege that Judge Hara had a personal bias for or against either party as required under HRS § 601-7(b). Nor did Trevino's memorandum in support of his Motion for Recusal affirm facts showing Judge Hara had a personal bias for or against either party. Instead, Trevino summarily states, "[i]t is only reasonable to suspect Judge Hara's partiality toward Trevino; human nature would expect Judge Hara to harbor a partial view of Trevino given the nature of his consultation with Ivan Nakano[.]" In his opening brief, Trevino offers a similarly unsupported observation that Judge Hara's relationship to Nakano, "does raise the spector [sic] of personal knowledge of material facts in dispute, bias, or prejudice." We conclude that such insinuations of personal bias do not trigger recusal under HRS § 601-7(b), but are more properly considered to raise questions about whether Judge Hara's role in the proceedings created an appearance of impropriety.

HCJC Rule 2.11(a) requires judges to disqualify themselves in a relatively broader range of circumstances than under HRS § 601-7(b):

> Rule 2.11. DISQUALIFICATION OR RECUSAL
>
> (a) Subject to the rule of necessity, a judge shall

---

[4](...continued)
direction of the judge, shall be considered pecuniary interests for purposes of this section; and after full disclosure on the record, parties may waive disqualification due to any pecuniary interest.

(b) Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.

> disqualify or recuse himself or herself in any
> proceeding in which the judge's impartiality might
> reasonably be questioned, including but not limited
> to the following circumstances:
>
> (1) The judge has a personal bias or prejudice
> for or against a party or a party's lawyer, or personal
> knowledge of facts that are in dispute in the
> proceeding.
>
> . . . .
>
> *COMMENT*
>
> *[1] Under this Rule, a judge is disqualified or recused
> whenever the judge's impartiality might reasonably be
> questioned, regardless of whether any of the specific
> provisions of Rules 2.11(a)(1) through (6) apply.*

HCJC Rule 2.11(a) and Rule 2.11 cmt. 1 (asterisks omitted).

"The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." Office of Disciplinary Counsel v. Au, 107 Hawai'i 327, 338, 113 P.3d 203, 214 (2005) (citation, internal quotation marks and brackets omitted). Rule 2.11(a)(1) of the HCJC contains the same language as 28 U.S.C. § 455(b)(1), providing that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" 28 U.S.C. § 455(b)(1) (current through P.L. 113-47). Further, "[a] judge's obligation to disqualify or recuse himself or herself under these Rules applies regardless of whether a motion to disqualify or recuse is filed." HCJC Rule 2.11 cmt. 2.

The following circumstances lead us to conclude that Judge Hara should have recused himself pursuant to Rule 2.11(a). Judge Hara had an attorney-client relationship with Nakano in 2003. That relationship concerned a severance agreement with Big Island Toyota, the circumstances surrounding which are material to facts in dispute in the instant case. Judge Hara limited the scope of Nakano's trial testimony to avoid reference to his attorney-client relationship with Judge Hara.

Judge Hara determined that limiting the scope of the examination of Nakano to exclude matters he discussed in his 2003

9

consultation with Judge Hara and "who he consulted" was warranted in a balance between "[Trevino's] rights to go ahead and examine [Nakano] based on the other testimony of the witnesses . . . and the necessity of the [circuit c]ourt . . . to proceed with this trial[.]"

Judge Hara stated that he disclosed his relationship with Nakano to the parties' counselors Saito, Ando, and Bickerton during early stages of the litigation. According to Judge Hara, "this was fairly early on and there was in my recollection no indication by any of the parties that they felt that relationship was going to interfere with this [circuit c]ourt's ability to proceed as trial judge in this case."

Even if Trevino's oral motion for disqualification could be considered untimely, "[a] judge's obligation to disqualify or recuse himself or herself under these Rules applies regardless of whether a motion to disqualify or recuse is filed." HCJC Rule 2.11 cmt. 2. Judge Hara's relationship to Nakano and knowledge of matters concerning Nakano's employment with Big Island Toyota made Judge Hara's participation in the case appear improper, thus triggering his obligation to recuse or disqualify himself from presiding over the case.

Judge Hara presided over a case where he had "personal knowledge of facts that [were] in dispute in the proceeding." HCJC Rule 2.11(a)(1). "Knowledge" as defined in HCJC "mean[s] actual knowledge of the fact in question" and "a person's knowledge may be inferred from circumstances." HCJC, Terminology. The record contains evidence of circumstances from which Judge Hara's personal knowledge of disputed facts are logically inferred. On January 10, 2012, in opening statements at trial, Toyota Plaintiffs' attorney argued that Trevino had told De Luz that Nakano, "the most trusted 30-year employee ever, was stealing from him [De Luz]" and that Trevino had fired Nakano for that. Nakano was Trevino's predecessor at Big Island Toyota and Trevino negotiated Nakano's "contentious" termination package. Nakano's subsequent consultation with Judge Hara as a private practice attorney on his severance package, and under the definition of "knowledge" provided by the HCJC, we conclude that

10

Judge Hara had personal knowledge of contentious circumstances surrounding Nakano's termination from Big Island Toyota and that those circumstances include facts that are material to the present dispute over Trevino's employment with the same employer.

This case is distinguishable from State v. Ross, 89 Hawai'i 371, 974 P.2d 11 (1998). Ross, involved criminal charges against a defendant alleged to have harassed a store clerk. The Hawai'i Supreme Court concluded that a judge's intermittent arm's length sales of fish to the store and acquaintance with the store's president did not establish grounds for vacating the judge's adverse rulings on the basis of an appearance of impropriety. The holding in Ross pivoted on the reasonableness of questions posed to the judge's impartiality, whereas the instant case concerns HCJC provisions mandating Judge Hara's recusal or disqualification based on inferences of his personal knowledge of disputed facts from the circumstances. See HCJC Rule 2.11(a)(1) and see Ross, 89 Hawai'i at 380, 974 P.2d at 20. The Ross judge's casual vendor relationship and acquaintance with the store owner had no relation to the controversy over which he presided (i.e., the defendant's trial for criminal harassment of the store's clerk) and the store was not itself a party to the proceeding. Ross, 89 Hawai'i at 380, 974 P.2d at 20. By contrast, Judge Hara's knowledge of Toyota Plaintiffs' "contentious" termination of Nakano directly implicates Trevino's role in negotiating with Nakano over his termination and Big Island Toyota is itself a party to the present case. These distinguishing circumstances further lead us to the conclusion that Judge Hara's actions rise to the level of an abuse of discretion warranting our adverse review.

We conclude that Judge Hara abused his discretion by failing to recuse himself despite his personal knowledge of facts in dispute in the proceeding. See HCJC Rule 2.11(a) (providing that a judge's obligation to disqualify or recuse himself is subject to the rule of necessity); HCJC Rule 2.11(a)(1) (requiring a judge to recuse herself or himself if she or he has personal knowledge of facts in dispute in the subject proceeding); and TSA Int'l Ltd., 92 Hawai'i at 252, 990 P.2d at

11

722.

### III. CONCLUSION

Therefore, we vacate the Circuit Court of the Third Circuit's (1) October 9, 2012 Final Judgment; and (2) August 2, 2012 "Order Denying Defendant Victor D. Trevino, Jr.'s Motion For Reconsideration Of Order Denying Defendant Victor D. Trevino's Motion For Recusal And/Or Disqualification Of Judge Glenn S. Hara Filed Under Seal On January 17, 2012, Filed March 22, 2012, Filed April 2, 2012" and remand this case for proceedings consistent with this opinion. Trevino's other points on appeal are now moot.

DATED: Honolulu, Hawai'i, January 29, 2014.

On the briefs:

Victor D. Trevino, Jr.
Defendant/Counterclaim-
Plaintiff/Third-Party
Plaintiff/Appellant pro se.

Paul M. Saito
Andrew L. Salenger
Trisha L. Nishimoto
(Cades Schutte)
for Plaintiffs/Counterclaim-
Defendants/Appellees.

Presiding Judge

Associate Judge

Associate Judge

12